NEW YORK PRACTICE REPORTS. 151

Dickson agt. Broadway & Seventh Avd. R.R. Co

## N. Y. SUPERIOR COURT.

DELIA DICKSON, respondent, agt. THE BROADWAY AND
SEVENTH AVENUE RAILROAD Co., appellants

Where the plaintiff brought her action against the defendants—a city railroad com-
pany—for damages alleged to have been caused by serious injuries received by
her, through the negligence and carelessness of the defendants' servants, in start-
ing the car on a return trip before she could get off, by reason whereof she was
thrown upon the paved street—her leg broken and other injuries received.

*Held*, by the general term on appeal by the defendants, that the evidence given upon
the trial was sufficient, not only to establish the fact that the plaintiff was not
thrown from the car by the starting of the horses, but that she must have jumped,
or stepped off, of her own volition, after the car was in motion.

The plaintiff having failed to prove upon the trial that the injuries of which she
complained, were caused by the starting of the horses, the judgment rendered in
her favor was reversed and a new trial ordered, costs to abide event.

*General Term, December,* 1870.
*Before* BARBOUR, *C. J.,* McCUNN *and* JONES, *JJ.*

In April, 1869, the plaintiff left her home to go to the
Central Park. She got on to one of the defendants' cars
and asked the conductor if he would take her to the Central
Park, and he told her that he would leave her at the Park.

When the car arrived at the block between 52d and 53d
street, the car stopped, and the only other passenger, besides
the plaintiff, got off. Not having arrived at the Central
Park, the plaintiff kept her seat, until she suddenly discov-
ered the horses being hitched on the other end of the car.

She then got up to leave. Just as she reached the door
of the car and was about going out, the car suddenly started,
and she was thrown off and seriously injured.

Her leg was broken, anchylosis of the ankle was pro-
duced. She was laid up, and under the daily care of a
physician for a period of four months. She received an in-

jury from which she can never recover.   She was still lame from it at the time of the trial.

The case was tried before Mr. Justice MONELL and a jury. The jury found a verdict for the plaintiff for $3,000.   The defendants made a motion for a new trial, which was denied, and judgment was entered on the verdict, from which this appeal is taken.

The defendants' statement did not materially differ from the plaintiff's, except that it claimed to have established at the trial, that all the passengers had alighted and were safely landed before the car started, and that plaintiff received the injury complained of by a mis-step in passing from the car to the sidewalk, over the rough and uneven pavement.

JOHN M. SCRIBNER, Jr., *for appellant.*

I. Plaintiff was required to prove *affirmatively*, and by *preponderance* of evidence, that the accident which caused her injury was occasioned *solely* by defendants' negligence. A mere "balanced case" is not enough.   The burden of proof is upon her, and she must satisfy the court *by the greater weight of testimony* that, without any carelessness or blame on her part, she has suffered an injury wholly through the neglect or wrongful act of the defendants. (*Ernst* agt. *Hudson R. R.R. Co.*, 24 *How.*, *cited from p.* 103.) The legal propositions established by this case were distinctly approved, when the same case was a third time before the court of appeals.   (39 *N. Y.*, 66.)   "The judge will not be justified in leaving the case to the jury, where the plaintiff's evidence is equally consistent with the absence as with the existence of negligence in the defendant." (*Cotton* agt. *Wood*, 98 *Eng. Com. Law.*, 566.)   It is unnecessary to multiply authorities in support of such familiar principles.

II. The plaintiff failed to establish a cause of action against the defendants.   That she was injured at the time

referred to, is not disputed; but she failed to prove—unless her own evidence, alone, is allowed to outweigh the testimony of all the other witnesses in the case—that her injury was attributable to any degree of negligence on the part of the defendants. She was, in fact, the only witness on her own behalf as to the circumstances of the accident; because her witness, the policeman, was proved to have stated on the same day, that he did not see the accident; and Ketchell testified distinctly that he did not see plaintiff before she fell, but that the first time he saw her she was in the middle of the street. He made this statement several times with great positiveness in response to plain and direct questions, repeated in unmistakeable language by plaintiff's own counsel; and the court must certainly disregard his subsequent testimony, when he attempts to *unswear* the statements so distinctly and deliberately made on his first examination.

As against the evidence of the plaintiff, the defendants proved that when the car stopped all the passengers were safely landed, and when it started on its return trip there was no person in or about the car except the driver and conductor.

That the plaintiff, when she was picked up, lay fifteen or twenty feet from the railroad track, was proved without contradiction; which, of itself, is evidence that she could not have received her injury in the manner she states.

Defendants proved, also, the undeniable fact that, at the place of the accident, the pavement of the carriage-way was exceedingly rough, being paved with large cobble stones of unequal sizes, with ruts and indentations so that Vosburgh says he used to avoid it and take Broadway; and the doctors, who were sworn as witnesses, agreed that the plaintiff's injuries could have been sustained by her in walking from the car to the sidewalk over such a pavement. Waterman, a disinterested witness, testified that plaintiff did meet with her misfortune in this way. "She took a step,

stumbled and fell." He was within fifty feet from the plaintiff, and he cannot be mistaken. He says he first saw her on the street, between the track and the gutter, ten feet from the rail. "She was falling when I first saw her. The car had just then started on its way down town. It was going very slow when I first saw the lady." He corroborates the driver and conductor; and Vosburgh adds, that the conductor was on the back platform, where he must certainly have seen the plaintiff if she was thrown from the car.

Upon this evidence defendants were entitled to a nonsuit, and the court erred in refusing to dismiss the complaint. (*Johnson* agt. *Hudson River Railroad Co.*, 20 *N. Y.*, 73; *Wilds' Case*, 24 *N. Y.*, 430; *S. C.*, 29 *N. Y.*, 315; *Sheldon* agt. *Hudson River Railroad Co.*, 29 *Barb.*, 229; *Suydam* agt. *Grand Street Railroad Co.*, 41 *Barb.*, 380; *Ernst* agt. *Hudson River Railroad Co.*, 39 *N. Y.*, 61.)

*Wilds' Case* (24 *N. Y.*, 430), is constantly cited in the court of appeals, and the legal doctrines pronounced in that case have never been shaken. (*Grippen* agt. *N. Y. Central Railroad Co.*, 40 *N. Y.*, 52.)

Although the law allows parties to be witnesses on their own behalf, their testimony is to be examined with greater scrutiny than that of disinterested witnesses. (*Watkins* agt. *Cousall*, 1 *E. D. Smith*, 66.)

III. Ample time was afforded to the plaintiff to get off, and if her statement of the circumstances of the accident is to govern, even then she is not entitled to recover. She says she was the only passenger in the car when it stopped. Her exit was not obstructed, and she could certainly have safely alighted in the time necessarily occupied by the driver in reversing his team. All the authorities agree that the plaintiff must be held to the exercise of ordinary care, and if, by the exercise of her ordinary faculties, she could have seen and avoided the danger, she cannot maintain this action.

IV. This verdict was against the clear weight of evi-

dence, and the power and duty of the court to reverse a judgment founded upon such a verdict is determined in the following, among other cases : (*Sheldon* agt. *Hudson River Railroad Co.*, 29 *Barb.*, 226 ; *Thompson* agt. *Menck*, 22 *How.*, 431 ; *Heritage* agt. *Hall*, 33 *Barb.*, 347 ; *Wilds* agt. *Hudson River Railroad Co.*, 24 *N. Y.*, 430 ; *Macy* agt. *Wheeler*, 30 *N. Y.*, 231 ; *Haring* agt. *N. Y. and Erie Railroad Co.*, 13 *Barb.*, 15, cited 41 *Barb.*, 380 ; *Mackey* agt. *N. Y. Central Railroad Co.*, 27 *Barb.*, 541.)

V. The court erred in allowing the questions put to the witness Ketchell. A reference to the previous testimony of this witness will show that the same questions were put to him on his first examination and explicitly answered, and it was improper after the plaintiff had rested, to allow him, with no request by himself, but in answer to leading questions, to deliberately retract his previous testimony, which did not conflict with, but materially corroborated defendants' witnesses. The testimony shows that the intimation that there was any mistake, came from the counsel and not from the witness.

VI. The court erred in refusing to charge defendants' third request. (*Ernst Case*, 24 *How.*, 97 ; *S. C.*, 39 *N. Y.*, 61, *Justice* CLERKE'S *Opinion*.)

VII. The court erred in refusing to charge defendants' fourth request.

VIII. The court erred in refusing to charge the jury in the words of defendants' seventh request.

IX. The court erred in refusing to charge as requested in defendants' twelfth request.

The testimony of the witness Waterman, if believed, constituted a perfect defense to the plaintiff's cause of action, and the jury should have been so instructed.

X. The verdict was excessive. The jury, no doubt, have included in their verdict compensation for the broken ribs (not sued for and never heard of until the trial), doctor's and druggist's bill, nurse's wages all together, for

although on defendants' motion testimony as to these items was stricken out of the record, it was not expunged from the minds of the jury as the amount of the verdict shows. Upon her complaint plaintiff could only recover for her broken leg. Another suit is pending by her husband for loss of service and expenses. If the court does not wholly reverse the judgment, the verdict should be reduced. (*Collins* agt. *Albany and Schen. Railroad Co.*, 12 *Barb.*, 492; *Clapp* agt. *Hudson River Railroad Co.*, 19 *Barb.*, 462.)

XI. The judgment should be reversed and a new trial ordered, with costs to abide event.

IRA D. WARREN, *for respondent.*

I. The first exception which seems worthy of attention at all, is the third request to charge, in which the court was requested to charge that "the plaintiff must make out more than a balanced case by a preponderance of reliable evidence."

This proposition was in substance submitted to the jury. The plaintiff had four witnesses to two. There was nothing to show that their evidence was not perfectly reliable.

Such a general proposition applicable to no testimony in the case, the defendant cannot claim to have charged in *his* language where it is in substance left to the jury, his honor, however, charged it stronger than requested, for he told the jury " if they believed the conductor and driver, they must find a verdict for the defendants." (*Downs* agt. *Sprague*, 2 *Keyes*, 57.)

The judge has or ought to have a right to choose his own language on the general propositions of a case.

The fourth request requires no comment. The seventh request is a hypothetical proposition. There is no evidence in the case to justify any such charge. (*Havens* agt. *Erie R. R. Co.*, 53 *Barb.*, 328; *Rouse* agt. *Lewis*, 2 *Keys*, 352.)

It is error·for a judge to instruct the jury that if they believe the testimony of one witness (where there are other witness on the same subject,) they must find a verdictfor the plaintiff or defendant. (*Clements* agt. *McConnell*, 14 *Ill.*, 154.)

II. The defendants' objection to the re-examination of the witness, Mitchell, to the questions put to him are not tenable.

The witness misunderstood the questions put to him. He had sworn that he first saw plaintiff in the middle of the street, when he meant on the platform of the car, which stood in the middle of the street.

The witness's understanding not being of the clearest character, it was entirely permissible to recall him to correct any mistake.

This was, however, entirely within the discretion of his honor the justice who tried the cause, and is not the subject of review. (*Vrooman* agt. *Griffiths*, 1 *Keyes*, 53 ; *Foster* agt. *Cronkhite*, 35 *N. Y.*, 153.)

He had a perfect right to permit, or refuse permission to recall this witness, it was entirely in his discretion. In this case, it would have been an act of injustice to the witness and plaintiff both, to have refused, as the witness's language did not convey all he meant. He meant to say in the middle of the street on the platform of the car.

III. The defendants claim that the damages are excessive.

The court will see this was a very serious injury. She was under the charge of a physician four months. She can never recover. She suffered from it at the time of the trial, more than a year after the accident.

There is a constant swelling of the limb.

KENT, C. J., in *Coleman* agt. *Southwick*, (9 *Johns.*, 45,) lays down the rule, that to justify the court in granting a new trial for excessive damages, that they should be so excessive " as to strike all mankind at first blush, as beyond all measure unreasonable and outrageous, and such as mani-

festly show the jury to have been actuated by passion, par-
tiality, corruption or prejudice."

There is nothing in this case coming within that rule.

In the case of *Clapp* agt. *H. R. R. R. Co.*, a verdict for
$4,500, was sustained where the injury was not more than
this.

In *Drew* agt. *Sixth Avenue R. R. Co.*, (26 *N. Y.*, 52,) a
verdict for $2,500 was sustained for loss of services of a boy
eight years old. The court of appeals say that the damages
was wholly for the jury to determine.

Cases of larger verdict for injuries no greater, might be
multiplied, if it was necessary. (*Ingersoll* agt. *Miller*, 47
*Barb.*, 47.)

Where a case is submitted to a jury under so able and
careful a charge from the court as this, where the injury is
a permanent one, where the plaintiff was confined to her
house for four months, this court will hardly feel justified
in setting aside a verdict for $3,000 until some more accur-
ate method is arrived at for measuring the pecuniary price
of human suffering than the judgment of twelve men taken
from the ordinary pursuits of life. Certainly the court is
not better qualified to judge of that than the jury. We
have had the unanimous judgment of twelve. The defend-
ants now ask that the judgment of three pronounce the judg-
ment of twelve erroneous.

As long as bodily pain and suffering are subjects of com-
pensation in actions of this kind, as is now the settled law
of this state (*Ransom* agt. *N. Y. and Erie Railroad Co.*, 15
*N. Y.*, 417), just so long a jury, and not the court, should
estimate its amount. (*Redfield on Railways, Vol.* 2, 221,
*subd.* 6.)

IV. There is a conflict of evidence on every question
in this case.

It is hardly necessary to discuss the proposition now,
that where there is such conflict of evidence, the court
will not set aside the verdict. (*Hooglan* agt. *Wright,* 7

*Bosw.*, 394; *Tinson* agt. *Welch*, 7 *Robt.*, 394, *and cases cited; Polhemus* agt. *Moser*, 7 *Robt.*, 489; *Morris* agt. *Second Avenue Railroad Co.*, 8 *Bosw.*, 681.)

We have four witnesses against two on the question of negligence. On the question of injury, Dr. Randolph on one side, and Dr. Ranny, who never saw the injury, on the side of the defendant.

There does not seem to be anything in this case to require discussion, either on the exception or evidence.

V: We ask that the judgment be affirmed, with costs.

This action was brought to recover damages for injuries to the person of the plaintiff, claimed to have been caused by the negligence of the defendants in the management of one of their street railroad cars, upon which the former was a passenger.

*By the court*, BARBOUR, C. J.—It appeared upon the trial that the plaintiff, an old lady, entered the car in Seventh avenue, near 26th street, intending to go to the Central Park, when the car arrived at a switch near 53d street, it was stopped to enable the passengers to alight and take another car, and while it was so stopped, the horses were transferred from the northern end of the car to its southern end, and were then started to draw it that way, soon after which the plaintiff received the injuries in question.

The plaintiff testified, that she supposed at first, that the car had merely stopped there to let off the passengers, but on seeing that the horses had been taken from the north end of the car and were passing towards the other end of it, she got on her feet to go out before they should start back. Her statement in regard to the particular manner in which the injuries were received by her, was as follows : " when I came convenient to the door the horses started quickly and knocked me against the iron that lay at the dash-board. *Then I thought to catch hold of the dash-board, but I missed*

*it, and I went into the street."* \* \* " I was not exactly out; I was pitched out against the platform, I was just a step from the door when the horses started, just opposite the door, very convenient to it." \* \* , " I was within less than one step out, I was just going out of the door, and then they started very fast." \* \* " My right side struck against the railing that runs across the dash-board. I am sure I struck my right side." \* \* *" I kind of thought I would make something, but there was nothing for me to get the street, and I got the street;* when I struck against the iron, *I tried to get hold of something, but could not, and the next thing I found myself in the street.* I fell on the left side of the street going down."

The plaintiff did not testify directly, that she was thrown from the car, or fell from it, either because of the starting of the horses, or otherwise; nor it appears to me, can it necessarily or even properly be inferred from the fact detailed by her, that she did fall or was thrown from the car to the street, and thus received her injuries. She merely stated that after being thrown against the dash-board, she tried to catch hold of something, but could not, as *" went into the street,"* \* *" for the street "* \* *" found herself in the street.".* It is impossible to determine from these statements of the plaintiff, whether she believed, when thus testifying as a witness, that she was thrown over the dash-board, as charged in her verified complaint, or that she was thrown into the street through the eastern gangway, or that, in her fright and excitement, she jumped or stepped off from the car, or whether, in fact, she was unable to state, when testifying, how she reached the street. Her answer, " I tried to get hold of something, but could not, *and the next thing I found myself in the street,"* taken in connection with the fact that she failed to explain the manner in which she reached the street from the place where she collided with the dash-board, seems to sustain the theory that she did not remember or was

unable to state how it was done. Be that as it may, however, it is certain that the plaintiff did not testify that she was thrown off the car by the starting of the horses, and I think it may safely be assumed, that she did not state facts upon her examination, which were sufficient to prove that such was the case.

Indeed, I am fully satisfied from a careful examination of the entire case, that the evidence given upon the trial was sufficient, not only to establish the fact that the plaintiff was not thrown from the car by the starting of the horses, but that she must have jumped or stepped off of her own volition, after the car was in motion. For she was so thrown out of the car, through the northern doorway, that her right side struck against the dash-board, and she fell upon the street on the eastwardly side of the car. Now, if she had fallen backwards towards the east, after striking the dash-board opposite the door, and had landed upon the ground, her head and shoulders would have received the injury, and not her leg and ankle, and yet, the upper part of her person was unhurt. But, the point where she struck the dash-board, must have been so far from the eastern side of the car as to render it impossible for her to fall from that point into the street, and such a fall, too, *it may be observed incidentally, would have been at a right angle with the line of propulsion?* It appears to me, therefore, that the plaintiff must have taken some steps from the place where she struck the dash-board towards the eastern side of the car, before she fell; and I see no way of accounting for the breaking of her leg and the dislocation of her ankle, unless the last of those steps was from the car to the ground. If that step was taken while the car was in motion, it may well be that the injuries to her leg and ankle, were caused thereby.

The theory that the plaintiff fell immediately upon striking the dashboard, or that such fall was the direct conse-

quence of the starting of the horses, was further disproved by the evidence of her own witness Kitchell, who stated that he saw her standing upon the rear platform after the car had started to go back; by the testimony of Vosburgh, who stated that he saw the old lady standing on the rear of the car, and apparently waiting to get off, and shortly afterwards saw her lying in the street; and by that of the witness Waterman, who testified that he saw her upon the street as the car was moving off, and saw her take a step, stumble, and fall there.

The plaintiff, therefore, failed to prove upon the trial, that the injuries of which she complained were caused by the starting of the horses.

Besides—even conceding, for a moment, that the injuries complained of were caused directly by the starting of the horses—I see no reason for imputing to the defendants any negligence, or want of care, in starting their horses, even though the plaintiff was standing or walking in the car, but within reach of the door. It is one of the customary and usual incidents of travel on all the street railroads, and cannot be considered negligence *per se*. But if there was negligence of the company in this regard, there was also some negligence on the part of the plaintiff, which contributed to the accident. For she saw the horses going to the south end of the car, and got up to go out, as she testified, "before they would start back." She was, therefore, aware that they were about to start back; and, as a careful, prudent woman, ought to have guarded against a fall, either by *putting her hand upon the door-casing, or otherwise.* In a word, if it was negligence, on the part of the defendants, to start the horses while the plaintiff was walking in the car, it was equally negligence on her part to walk there when she knew they were about to start.

I am, therefore, of opinion that the court erred in refusing to dismiss the complaint after the proofs were closed;

Dickson agt. Broadway & Seventh Ave. R.R. Co.

and in submitting the case to the jury; and, for that reason I think the judgment should be reversed, and a new trial directed, with costs to abide the event.

JONES, J., *concurring*.—I concur in the result, but on the sole ground that the judge should have charged as requested, that if the jury believed the testimony of witness Waterman the plaintiff could not recover.